UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREDERICK KRANZ,

        Plaintiff,

v.                                                           Case No.  8:20-cv-2714-TPB-SPF

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

## I.

### A.    Procedural Background

Plaintiff filed an application for a period of disability and DIB on March 20, 2018 (Tr. 71, 86, 222-23).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 70-87, 109-11, 88-104, 113-18).   Plaintiff then requested an administrative hearing.  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 40-69).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits

(Tr. 18-31).   Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-5).   Plaintiff then timely filed a complaint with this Court (Doc. 1).   The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1969, claimed disability beginning October 1, 2015 (Tr. 18).   Plaintiff enlisted in the United States Army in 1987 after graduating from high school in Venice, Florida.   He attended Infantry School and Airborne School, eventually becoming a paratrooper assigned to the 101st Airborne Division (Tr. 46).   He served in combat in Panama and in Desert Storm and, after four years, took an honorable discharge from the Army (*Id.*).   As a civilian, he attended community college, then the University of Central Florida for his undergraduate degree, and finally the University of Florida, where he earned his law degree (*Id.*).   After law school graduation, Plaintiff served in the Army's Judge Advocate General's ("JAG") Corps from 2000 until 2015.   That year, he took an early retirement due to health reasons (Tr. 48-50).   Plaintiff's past relevant work experience was as a JAG attorney (Tr. 30).   Plaintiff alleged disability due to chronic back pain, spinal fusions, atrial fibrillation, ulcerative colitis, hypothyroidism, hypertension, sleep apnea, osteoarthritis, a voiding dysfunction, tinnitus, anxiety, depression, and sciatica (Tr. 71).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2020 and had not engaged in substantial gainful activity since October 1, 2015, the alleged onset date (Tr. 21).   After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff

had the following severe impairments: degenerative disc disease status post fusion, inflammatory arthritis, osteoarthritis, and obesity (Tr. 21).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work "except the claimant cannot climb ladders, ropes, or scaffolds and cannot climb ramps and stairs." (*Id.*).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 26).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform his past relevant work as an attorney as that job is generally performed (Tr. 30).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 30-31).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal

standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

In the parties' 95-page joint memorandum, Plaintiff alleges five errors: the ALJ (1) failed to incorporate the functional limitations identified by family practice physician Mohammed Arshad, M.D. and consultative examiner Debra Roggow, D.O. into Plaintiff's RFC; (2) improperly assessed Plaintiff's mental impairments as non-severe and

did not include limitations related to his mental impairments in his RFC; (3) erred in finding Plaintiff can perform his past relevant work as an attorney; and (4) did not properly consider Plaintiff's 100% VA disability rating (Doc. 30).  As a fifth point of error, Plaintiff contends that the ALJ and the Appeals Council judges who decided his case lacked the constitutional authority to do so (*Id.*).

As an initial matter, the Court notes that Plaintiff's inability to pare down the issues reflects poorly on the strength of his arguments. *See, e.g., McMahon v. Comm'r of Soc. Sec.*, No. 8:12–cv–2746–T–30TGW, 2013 WL 6116828, at *3 (M.D. Fla. Nov. 20, 2013) ("The plaintiff attacks the law judge's decision on nine grounds. It is unreasonable to think that the law judge is so incompetent that she committed reversible error nine times. Rather, the assertion of nine issues reflects poorly on plaintiff's counsel who did not make the effort to winnow the frivolous claims from the unmeritorious ones.") *aff'd sub. nom.*, 583 F. App'x 886 (11th Cir.2014); *Vue v. Comm'r of Soc. Sec.*, No. 8:13-CV-3128-T-30EAJ, 2015 WL 631383, at *2 (M.D. Fla. Feb. 13, 2015) (same).  This is especially glaring here, where the four-volume administrative record is 10,000 pages long (*see* Docs. 17-20).

The Court also reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains substantial evidence to support the ALJ's factual findings.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*  In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983). Considering this, the undersigned discusses each of Plaintiff's arguments below and finds that none warrants remand.

### A.    Drs. Arshad and Roggow

Plaintiff argues that the ALJ erred because Plaintiff's RFC does not reflect the functional limitations identified in May 2015 by Dr. Arshad on Plaintiff's VA disability forms, and in September 2019 by Dr. Roggow during her consultative examination of Plaintiff (Doc. 30 at 33-44). The Commissioner responds that, not only did Dr. Arshad complete the disability forms prior to Plaintiff's alleged onset date, the forms are check-the-box questionnaires that do not constitute medical opinions (*Id.* at 44-48). Regarding Dr. Roggow, the Commissioner contends that the ALJ properly considered her opinion (*Id.* at 49).

Plaintiff's first argument is without merit, because a claimant's RFC determination is reserved for the ALJ, who is not required to include limitations that the record does not support. To backtrack, at step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ assesses what a claimant can do in a work setting despite any physical or mental limitations caused by his or her impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and must consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.

1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

A claimant's RFC is a formulation reserved for the ALJ, not Plaintiff's treating or consultative physicians. *See* 20 C.F.R. § 404.1546(c). And the ALJ, of course, must support his or her findings with substantial evidence. *See Beegle v. Comm'r of Soc. Sec. Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 926 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor").  An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, the ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).

Here, the ALJ found Plaintiff retained the RFC for light work "except the claimant cannot climb ladders, ropes, or scaffolds and cannot climb ramps and stairs." (Tr. 25). The ALJ did not expressly refer to Dr. Arshad's records in his decision but stated that he considered "the treatment notes provided by the Department of Veterans Affairs as discussed above." (Tr. 30).  These records include Dr. Arshad's completed questionnaires. Regarding Dr. Roggow's September 13, 2019 medical source statement and accompanying treatment note, the ALJ summarized them but found them unpersuasive (Tr. 29-30, 9025-33), a conclusion Plaintiff does not dispute.

For context, when Plaintiff was honorably discharged from the Army for the second time in 2015, he applied for and received disability benefits through the VA based on that agency's finding that he was totally and permanently disabled due to service-connected disabilities (Tr. 308-09).  As a part of Plaintiff's VA disability application, on May 14, 2015 (about five months before Plaintiff's alleged onset date for DIB purposes), Dr. Arshad completed a series of questionnaires based on his one-time examination of Plaintiff.  For example, the agency asked Dr. Arshad to complete questionnaires on esophageal conditions (Plaintiff had GERD), skin diseases (Plaintiff had none), chronic fatigue syndrome (not among Plaintiff's diagnoses), artery and vein conditions (he suffered from lower extremity edema), and sleep apnea (Plaintiff used a CPAP machine due to obstructive sleep apnea), among other conditions (Tr. 1436-1516).  The record does not contain other treatment notes from Dr. Arshad, and he indicates on the questionnaires that he did not review other evidence before completing the forms.

Relevant to Plaintiff's argument, Dr. Arshad indicated Plaintiff had "bilateral lower extremity pitting secondary to Morphine Pump" (Tr. 1490), which limited Plaintiff's "standing, climbing, walking and weight bearing." (Tr. 1495).  Plaintiff had cervical and lumbar degenerative disc disease, which made it difficult for him to turn his neck or back from side to side and limited his ability to bend, walk, climb stairs, and sleep (Tr. 1563-69, 1571-78).  And Dr. Arshad stated that Plaintiff's carpal tunnel syndrome caused Plaintiff to struggle to hold, grasp, and lift objects or type during flare-ups (Tr. 1509, 1515).

Dr. Roggow, for her part, conducted a consultative examination of Plaintiff in September 2019, and completed a medical source statement (Tr. 9025-26).  She opined that Plaintiff can occasionally lift 10 pounds and can stand and/or walk for less than two hours and sit for less than two hours in an eight-hour workday (Tr. 9025).  According to Dr. Roggow, Plaintiff has significant postural and manipulative limitations and needs to elevate his legs above his heart.  She wrote that Plaintiff needs to rest for two to three hours in the morning and in the afternoon due to his inflammatory arthritis and lumbar degenerative disc disease (Tr. 9026).  The doctor expected Plaintiff to be off task more than 60% of a workday and to miss three days of work a month.  Although Dr. Roggow examined Plaintiff only once, four years after his alleged onset date of October 2015, she opined that Plaintiff had suffered from these functional limitations since October 2015 (*Id.*).

Addressing Dr. Arshad's records first, the Commissioner contends they are not medical opinions (Doc. 30 at 46).  This distinction is important in the context of Social Security Ruling ("SSR") 96-8p, which provides that an ALJ's RFC assessment must "consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 34474 (July 2, 1996).  Plaintiff does not cite SSR 96-8p, instead relying on case law that applies Social Security Administration ("SSA") regulations that have since been revised (Doc. 30 at 41).[1]

---

[1] For instance, Plaintiff's lead case is *Dempsey v. Commissioner of Social Security*, 454 F. App'x 729 (11th Cir. 2011), in which the Eleventh Circuit reversed the district court and found that the ALJ erred by stating he assigned significant weight to a treating source

These cases are inapposite.  Before March 27, 2017, SSA regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).  In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed his claim in March 2018 (*see* Tr. 18).  As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).

Importantly, under 20 C.F.R. § 404.1513 (in effect when Plaintiff filed his claim), titled "Categories of evidence," there are five categories of evidence: objective medical evidence ("medical signs, laboratory findings, or both"); medical opinions; other medical

---

opinion, when that opinion in fact conflicted with the claimant's RFC; *see also Markell v. Astrue,* No. 8:06-cv-1720-T-TBM, 2007 WL 4482245 (M.D. Fla. Dec. 19, 2007) (remanding to agency where ALJ did not explain why he relied more heavily on non-examining reviewing doctors' opinions than on the plaintiff's treating physician) (Doc. 30 at 41-43).  The revised regulations eliminate the treating physician rule.

evidence; evidence from nonmedical sources; and prior administrative medical findings. A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical demands of work (such as sitting, standing, walking, and lifting), the mental demands of work (such as understanding, remembering, and maintaining concentration, persistence, or pace), "other demands of work" (such as seeing, hearing, or using other senses), and the ability to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2)(i)-(iv).   In contrast, "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* at § 404.1513(a)(3).

It is difficult to make heads or tails of Dr. Arshad's questionnaires for purposes of categorizing them.  They are check-the-box forms, and large chunks of them are blank because they inquire about impairments Plaintiff does not have.  They include a "Remarks" section, where Dr. Arshad records Plaintiff's telling of his symptoms. They also include an option to check "Yes" or "No" regarding certain diagnoses.  These features of the questionnaires – Dr. Arshad's recording of Plaintiff's subjective complaints and his listing of Plaintiff's diagnoses – do not constitute medical opinions under the regulations.

The portions of Dr. Arshad's notes that discuss Plaintiff's physical limitations and the severity of his impairments, however, arguably are medical opinions under the current regulations.  For example, on his Cervical Spine Conditions questionnaire, under the

12

heading "Functional Impact," Dr. Arshad notes simply that "[t]he impact of the cervical spine condition on the claimant's ability to work is due to difficulty in turning from side to side." (Tr. 1569)  On his Thoracolumbar Spine Conditions questionnaire, Dr. Arshad wrote: "The impact of the thoracolumbar spine condition on the claimant's ability to work is on bending forward, lifting, climbing, prolong sitting." (Tr. 1577)  And on his Artery & Vein Conditions questionnaire, Dr. Arshad states that "[t]he impact of the vascular condition(s) on the claimant's ability to work is due to effect on standing, climbing, walking and weight bearing." (Tr. 1495).  But even if these portions of Dr. Arshad's questionnaires contain medical opinions, the ALJ's RFC determination does not run afoul of SSR 96-8p, because Dr. Arshad does not elaborate on the extent of the impact Plaintiff's impairments have on his ability to work.  Simply put, Plaintiff has not demonstrated that Dr. Arshad's opinions conflict with an RFC for light work.  *See* 20 C.F.R. § 404.1567(b).

Additionally, the ALJ stated that he considered Plaintiff's treatment notes provided by the VA, which included Dr. Arshad's treatment notes.  "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" if substantial evidence supports the conclusion that the ALJ considered the claimant's condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  In fashioning Plaintiff's RFC, the ALJ discussed Plaintiff's 2009 spinal fusion surgery and his pain pump implant in 2013.  Doctors reduced the amount of opioid the pump infused in early 2015 (around the time Dr. Arshad noted Plaintiff's lower extremity edema), and in October 2016, pain management doctor Matthew Caffrey, M.D. ("Dr. Caffrey") removed the pump.  At that time, Plaintiff had a normal straight leg raise test, equal range of motion

in all extremities, and mild trigger points.  Plaintiff reported in November 2016 that after a few days of opiate withdrawal symptoms, he was doing well without the pump.  The ALJ summarized Plaintiff's treatment for right knee, joint, and shoulder pain in 2017 and 2018.  A whole-body scan in March 2019 showed arthritis in Plaintiff's knees, lower lumbar spine, shoulders, and feet.  Plaintiff's RA factor was negative, but he reported to Dr. Hamm, his primary care provider, that he was diagnosed with psoriatic arthritis (the treatment notes related to this diagnosis are not in the record).

Further weakening Plaintiff's argument is that Dr. Arshad's treatment notes predate Plaintiff's alleged onset date by five months.  Some cases suggest that pre-onset evidence is of little relevance, and some cases suggest the opposite.  *Compare Carmickle v. Astrue*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.") *with Hamlin v. Barnhart*, 365 F.3d 1208, 1222 n.15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of Mr. Hamlin's case record, and should have been considered by the ALJ.").  Courts in the Eleventh Circuit tend to hold that pre-onset medical evidence is of limited relevance.  *See, e.g.*, *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856 (11th Cir. 2018) (stating that medical opinions were of limited relevance because they predated claimant's alleged disability date); *Colbert v. Comm'r of Soc. Sec.*, No. 6:19-cv-2176-LRH, 2021 WL 1103692, at *7 (M.D. Fla. Mar. 23, 2021) (failure to mention or weigh physician's report that pre-dated onset date "did not result in error").

Turning to Dr. Roggow's medical source statement, the ALJ expressly considered it and found it to be "completely unpersuasive." (Tr. 29).  The ALJ wrote:

14

> The claimant saw Dr. Roggow one time for a disability examination rather than to seek treatment.  In addition, Dr. Roggow's opinion appears to be based on the claimant's subjective reports rather than her objective findings.   Dr. Roggow reported that the claimant had full range of motion in his back (then stated active forward flexion was 90 degrees), 4/5 muscle strength, normal gait, intact sensory examination, intact cognitive function, and full range mood/affect (Exhibit 55F).  Her opinions as to the listings are not supported by the record.  There is no evidence of the inability to ambulate effectively, the inability to perform fine and gross movements effectively, or nerve root compression causing the stated symptoms.  Finally, her willingness to opine as to the claimant's condition since October 1, 2015, despite first meeting the claimant almost four years later, renders her overall opinion less persuasive.

(Tr. 29-30).  Plaintiff does not challenge the ALJ's finding that Dr. Roggow's consultative opinion is unpersuasive.  He argues instead that the ALJ should have incorporated Dr. Roggow's opinions about his limitations into his RFC.  But Dr. Roggow's findings are inconsistent with evidence from other medical sources and other evidence, as the ALJ articulates in his decision and Plaintiff does not challenge.  Plaintiff's first argument fails.

### B.   Plaintiff's Mental Impairments

Next, Plaintiff contends the ALJ should have found his mental impairments (including anxiety, depression, PTSD, panic attacks, and agoraphobia) to be severe and should have included limitations related to his mental impairments in his RFC (Doc. 30 at 49-57).  The Commissioner responds that the ALJ's step two findings are sound, and, in any event, Plaintiff has not met his burden of proving his mental impairments cause work-related limitations (*Id.* at 57-61).

To the extent Plaintiff complains that the ALJ erred by not finding his mental impairments to be severe at step two, this is not a basis for remand.   The ALJ found that "the claimant's depression, anxiety, and alcohol abuse, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to

perform basic mental work activities and are therefore nonsevere." (Tr. 23).  The ALJ found other severe impairments, which is all that is required at step two.  *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that that ALJ must identify, at step two, all of the impairments that should be considered severe.").

Plaintiff also makes the more nuanced argument that the ALJ failed to incorporate his mild limitation in concentration, persistence, and pace into his RFC and that, if he had, the ALJ would have been compelled to conclude that Plaintiff could not perform his highly skilled past work as an attorney.  Plaintiff argues that a *mild* limitation in concentration, persistence, and pace equates to an *occasional* inability to perform these tasks.  Citing the Revised Handbook for Analyzing Jobs, Plaintiff contends this means he cannot concentrate between 11-33% of the time (Doc. 30 at 53).  There is no basis for this in the regulations, Social Security rulings, or applicable case law, and this argument fails.

To backtrack, when an ALJ evaluates a claimant's mental impairments at steps two and three, he or she employs a special technique (called the Psychiatric Review Technique, or PRT) to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3); *see Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005). The ALJ incorporates the results of the PRT into the findings and conclusions at steps four and five of the sequential evaluation process.  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).  But the PRT is separate from the ALJ's evaluation of a

claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Winschel*, 631 F.3d at 1180. In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Id.*

Here, the ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information; no limitation in his ability to interact with others; a mild limitation regarding concentrating, persisting, or maintaining pace; and no limitation in adapting or managing himself (Tr. 24). The ALJ then found that Plaintiff did not have severe mental impairments and did not have an impairment or combination of impairments that met or equaled a listed impairment. The Plaintiff's RFC assessment that Plaintiff is limited to light work accounts for Plaintiff's mild limitations in concentration, persistence, and pace, if supported by substantial evidence. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 (11th Cir. 2016) (finding that RFC limitation to short, simple instructions and occasional contact with co-workers and public accounts for moderate limitations in both social functioning and ability to maintain concentration, persistence, and pace).

Here, it is. First, the ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 24). Second, while still under the heading of step two, the ALJ began discussing his mental RFC assessment, considering the January 8, 2016 treatment note from VA psychiatrist Marina Nesterenko, M.D. Dr.

Nesterenko opined that Plaintiff's depression was in remission and his PTSD was in good control (Tr. 4225). She characterized Plaintiff's anxiety as mild, refilled his Xanax and Zoloft prescriptions, and told him to follow-up with her in one year (Tr. 4225-26).

The ALJ also relied on the September 1, 2016 mental health progress note from psychologist Andrew Bloch, Psy.D., which recorded Plaintiff's concerns about depression and anxiety (Tr. 4976-79) and Plaintiff's report that he had panic attacks at night and drank alcohol to calm himself down (Tr. 5218, 5238). Dr. Bloch recommended Plaintiff increase his dosage of sertraline (Zoloft) because he had been on the medication "for quite some time now with a good response and no appreciable deleterious side effects." (Tr. 4980). Plaintiff also mentioned to Dr. Bloch that he drove around the country for about eight months after retiring, and he had lots of friends (Tr. 5250). He bought a house in rural Tennessee, where he lives by himself and "spends his days fixing up his home." (*Id.*). Plaintiff splits his time between Tennessee and living with family in Florida (Tr. 5133, 5210, 5213). His Tennessee home is "about 1.5 hours far from the VA up in the mountain[,]" and he drives to appointments on his own (Tr. 5238). Plaintiff's mom reported that he can drive, shop, use the computer, watch television, care for his dog, manage his finances, and follow instructions (Tr. 24).

Additionally, the ALJ noted that Plaintiff did not seek mental health treatment between September 1, 2016 (he canceled a follow up appointment with Dr. Bloch, Tr. 5234), and January 29, 2018, when he contacted the VA to request a sertraline refill because he had been without the medication for a couple of months and his panic attacks had started again (Tr. 4978). Plaintiff's email to the VA states: "Any chance you could

18

refill my Zoloft?  I stopped taking it about 2.5 months ago but I've started to get panic attacks again.  I really think the Zoloft made a difference." (Tr. 6089).

At this point, there is another gap in treatment until October 10, 2018, when Plaintiff attended a psychological consultative examination with Maria Jimenez, Psy.D. (Tr. 5072-75).  She characterized Plaintiff's mental health symptoms as mild to moderate, noting there "was no reported impact of current mental health symptoms on being able to return to work." (Tr. 5074-75).   ALJ found Dr. Jimenez's opinion "less persuasive" because it was inconsistent with the paucity of Plaintiff's mental health treatment (Tr. 24). State agency psychological consultants Yamir Laboy, Psy.D. (at the initial level) and Michelle Butler, Psy.D. (at the reconsideration level), on the other hand, found Plaintiff's mental health symptoms caused no more than mild limitations (Tr. 70-79, 96).  The ALJ found these opinions the ALJ found "highly persuasive." (Tr. 24).   Considering this substantial evidence, the ALJ properly assessed Plaintiff's limitations related to his mental impairments; Plaintiff's second argument fails.

### C.     SVP Level 8

Plaintiff's third contention is that the ALJ erred in finding he could return to his past work as an attorney, a Specific Vocational Preparation ("SVP") level 8 job, because earlier in the application process, the agency determined he was limited to SVP level 1 jobs (Doc. 30 at 61; Tr. 104).  This argument is unavailing.

The Dictionary of Occupational Titles ("DOT") defines SVP as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker

situation."  DOT (4th ed. rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  A job with an SVP of 8 – such as the attorney position Plaintiff held in military – requires "over 4 years up to and including 10 years" of vocational training.  *Id.*

In January 2019, at the reconsideration level, the agency affirmed its determination that Plaintiff's "condition is not severe enough to keep [Plaintiff] from working." (Tr. 104). The Explanation of Determination form states: "Although you may need treatment for your condition, and it may limit your ability to perform your past work, disability cannot be established because you are still capable of performing work that requires less physical effort, and only a very short, on-the-job training period." (*Id.*)  Plaintiff contends this statement appears to be based on the RFC assessment completed by Aisha Bailey at the reconsideration level (Tr. 99-101).  Ms. Bailey opined that Plaintiff could not return to his past work but could work at the sedentary level as an assembler, addresser, or surveillance system monitor (Tr. 101).  According to Plaintiff, the ALJ erred because he did not discuss Ms. Bailey's conclusions and instead found Plaintiff capable of returning to his past work.

Despite Plaintiff's argument that the ALJ is duty-bound to follow the agency's findings at the reconsideration level, Plaintiff appealed the agency's reconsideration decision, requesting a hearing before the ALJ.  Consequently, the reconsideration determination was not binding on the ALJ.  *See* 20 C.F.R. § 404.921(a) ("The reconsidered determination is binding unless – (a) You or any other party to the reconsideration requests a hearing before an [ALJ] within the stated time period and a decision is made[.]").  Additionally, the Explanation of Determination form is not evidence as defined by 20 C.F.R. § 404.1513(a) (listing the categories of evidence), because it is not a

statement by an agency medical or psychological consultant and, therefore, is not a prior administrative medical finding. *See* 20 C.F.R. § 404.1513(a)(5) ("A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review[.]").

The burden is on Plaintiff to prove he cannot perform his past relevant work, either as he actually performed it or as the work is generally performed in the national economy. *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). "The regulations require that the claimant not be able to perform his past kind of work, not that he merely be unable to perform a specific job he held in the past." *Id.* at 1293 (citing 20 C.F.R. § 404.1520(e)). Here, the ALJ relied on the VE's testimony and the DOT and found that, given Plaintiff's RFC, Plaintiff could perform his past work as an attorney as the job is generally performed in the national economy (Tr. 30, 60-61).

Finally, although the ALJ did not specifically discuss Ms. Bailey's RFC finding, this is, at most, harmless error because the ALJ summarized the RFC determination of Shakra Junejo, M.D., who opined at the initial level that Plaintiff can do light work but can only stand and/or walk for about four hours in a workday. Dr. Junejo's RFC formulation is very similar to Ms. Bailey's (Tr. 80-83, 97-100). The ALJ found Dr. Junejo's opinion unpersuasive – it was unsupported by Plaintiff's treatment notes, inconsistent with Plaintiff's normal strength findings at physical examinations, and did not consider the significant gaps in treatment after Plaintiff's alleged onset date (Tr. 29).

Notably, Plaintiff does not challenge this.  Plaintiff's third argument does not warrant remand.

### D.    VA disability rating

Next, Plaintiff argues the ALJ erred in failing to consider Plaintiff's 100% VA disability rating and the evidence on which the VA determination was based (Doc. 30 at 65-68).  The VA determined Plaintiff has a 100% service-connected disability as follows: major depressive disorder (70%), prostate gland condition (40%), intervertebral disc syndrome (40%), migraine headaches (30%), paralysis of median nerve (30%), paralysis of sciatic nerve (20%), limited motion of ankle (10%), sinusitis (10%), limited extension of thigh (10%), limited flexion of knee (10%), hypothyroidism (10%), hiatal hernia (10%), arthritis, degenerative (10%), and tinnitus (10%) (Tr. 4243-44).

The VA's guidelines pertaining to disability determinations vary from the SSA's sequential analysis, and the VA's assessment is not binding on the Commissioner.  For claims filed *before* March 27, 2017, Social Security regulations, SSR 06-3p, and Eleventh Circuit precedent instructed the ALJ to assign "great weight" to the VA's disability rating. *See* 20 C.F.R. § 404.1504; SSR 06-3p ("the adjudicator should explain the consideration given to [a disability decision by other governmental agencies] in the note of decision for hearing cases"); *Falcon v. Heckler,* 732 F.2d 827, 831 (11th Cir. 1984) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983)) (holding that "[t]he findings of disability by another agency, although not binding on the [Commissioner] are entitled to great weight.").

Citing primarily pre-March 27, 2017 case law, Plaintiff argues that "[t]he ALJ was obligated to consider that another agency had found Plaintiff disabled during the relevant benefits period." (Doc. 30 at 67).  But the SSA has amended its regulations and rescinded SSR 06-3p for claims filed *after* March 27, 2017 (Plaintiff filed his claim on March 20, 2018).  The new regulation provides that the SSA will not articulate its analysis of a decision made by any other governmental agency or a non-governmental entity about whether a claimant is disabled, blind, employable, or entitled to any benefits.  *See* 20 C.F.R. § 404.1504; 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263 (Mar. 27, 2017).  In rescinding SSR 06-03p, the SSA noted that for claims filed on or after March 27, 2017, adjudicators will not explain how they weighed disability decisions from other governmental agencies and non-governmental entities, because this evidence is inherently neither valuable nor persuasive.  *See* 82 Fed. Reg. 15263.  Instead, the agency considers the evidence underlying the VA's disability decisions in accordance with 20 C.F.R. § 404.1513(a)(1)-(4) (Categories of evidence).  Plaintiff's one-line argument that "an administrative agency cannot by regulation overturn long-established judicial requirements" (Doc. 30 at 66) is undeveloped, unsupported, and unavailing.

The ALJ mentioned Plaintiff's 100% VA disability rating but stated it is "inherently neither valuable nor persuasive" (Tr. 30).  Then the ALJ clarified that he "did review the treatment notes provided by the Department of Veterans Affairs as discussed above." (*Id.*)  Specifically, the ALJ summarized Plaintiff's treatment by VA doctors and therapists (Tr. 21-30).  Under the current regulatory framework, this is sufficient consideration of Plaintiff's VA disability decision.  *See* 20 C.F.R. § 404.1504 (ALJ not required to "provide

any analysis" of VA decision but required to "considering all of the supporting evidence underlying the . . . [VA's] . . . decision" if such evidence is in the record.).

### E.    Constitutional Authority

Lastly, Plaintiff asserts a constitutional challenge to the Commissioner's authority based on the Supreme Court case *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183, 2197 (2020), and argues that the statutory limitations in 42 U.S.C. § 902(a)(3) regarding the removal of the Social Security Commissioner violate the Separation of Powers Clause of the United States Constitution (Doc. 30 at 74-77).  In *Seila Law*, the Supreme Court found that the CFPB, an agency under the auspices of the Executive Branch, was headed by a single individual whom the President could remove only for cause and that this limit on the President's removal powers violated the Constitution's Separation of Powers Clause.  140 S.Ct. at 2191.  Relevant here, the Commissioner of Social Security, under 42 U.S.C. § 902(a)(3), is removable only for cause.  Relying on *Seila Law*, Plaintiff argues the statute is unconstitutional, and "the government deprived this claimant of a valid administrative adjudicatory process." (Doc. 30 at 75).

The Commissioner agrees that, to the extent 42 U.S.C. § 902(a)(3) is construed as limiting the President's authority to remove the Commissioner without cause, the removal provision is unconstitutional (*Id*. at 77, citing Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542 (July 8, 2021)).  But, relying on *Collins v. Yellen*, 141 S.Ct. 1761 (2021), the Commissioner contends that even where an unconstitutional statutory removal restriction exists, a

plaintiff seeking relief on that basis must show that the removal caused him or her harm, a showing Plaintiff cannot make (*Id.* at 77-78).

Courts within the Eleventh Circuit have repeatedly held that the separation-of-powers argument is meritless in this context. *Herring v. Comm'r of Soc. Sec.*, No. 2:21-cv-322-MRM, 2022 WL 2128801 (M.D. Fla. June 14, 2022); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252 464 (M.D. Fla. Jan. 27, 2022); *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, No. 2:20-cv-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); *Perez-Kocher v. Comm'r of Soc. Sec.*, 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *3-4 (M.D. Fla. Nov. 23, 2021), *report and recommendation adopted*, No. 6:20-cv-2357-GKS-EJK, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022).  Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner of Social Security Nancy Berryhill, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection.  In *Collins*, the Supreme Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." 141 S.Ct. at 1781.  Section 902(a)(3) restricts only the removal of the Commissioner and does not reference an acting Commissioner.  It follows that Acting Commissioner Berryhill's appointment was constitutional.  *Id.* at 1782.

Put differently, Acting Commissioner Berryhill was not subject to the unconstitutional removal provision on which Plaintiff bases his claim, and any ratification of an ALJ by Acting Commissioner Berryhill would make that appointment

constitutional.  "[O]n July 16, 2018 the Acting Commissioner of Social Security [, Nancy Berryhill,] ratified the appointments [of the Social Security Administration's] ALJs and approved those appointments as her own."  84 Fed. Reg. 9583 (2019).  So, here, the ALJ's appointment, as ratified, is valid.  The ALJ issued his decision in Plaintiff's case on March 20, 2020, well after the ratification date of the ALJ.  Consequently, 42 U.S.C. § 902(a)(3) – the unconstitutional removal provision – did not affect Plaintiff's case.  Plaintiff's final argument fails.

## IV.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED.

2.  The Clerk be directed to enter final judgment in favor of the DEFENDANT and close the case.

IT IS SO REPORTED in Tampa, Florida, on June 22, 2022.


SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.